### MICHELIN et al. v. HAYES WHEEL CO.

(District Court, E. D. Michigan, S. D.  July 3, 1924.)

No. 445.

1. **Patents ⊜⇒328—927,266, for means for securing tires of automobiles, held valid and infringed.**

  The Michelin patent, No. 927,266, for means for securing tires of automobiles, by which the demountable rim is resiliently secured, claims 1 and 2, *held* valid and infringed.

2. **Patents ⊜⇒102—Oath of applicant proof of foreign patent.**

  A statement in the oath of the applicant for a patent that a prior French patent for the invention was taken out by him as inventor makes the French application a part of the United States application, and gives the patentee the advantage of the French filing date, under the International Convention, without further proof.

In Equity. Suit by Andre J. Michelin and others against the Hayes Wheel Company. Decree for complainants.

Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich., and Merrill E. Clark, of New York City, for plaintiffs.

Justin R. Whiting, of Jackson, Mich., Melville Church, of Washington, D. C., and Fred L. Chappell, of Kalamazoo, Mich., for defendant.

TUTTLE, District Judge. This is a suit based upon the patent to Michelin, No. 927,266, dated July 6, 1909, on means for securing the tires of automobiles and other vehicles.

[1] In the Michelin patent, the demountable rim is resiliently held in place upon the wheel between the back flange of the felly and a series of clamps that engage the demountable rim. Bolts carried by the felly pass through apertures in the clamps and are provided with nuts

that act upon the clamps, so as to secure the demountable rim in place, or permit the ready removal thereof. The clamps act to resiliently hold the demountable rim in place against the back flange, by a yielding pressure acting laterally of the rim. The back flange and the rim, as well as the clamps, have a certain amount of springiness or resiliency, and when the nuts are tightened, to secure the rim in place on the felly, this springiness provides a resilient follow-up action, laterally of the rim, between the back flange, the rim, the clamps, and the nuts, preventing these parts from becoming loose under the tendency of the rim to shift upon the felly in service. The clamps also perform the function of lock washers for the nuts, preventing the nuts from working loose and dropping off.

I am satisfied that this springiness or resiliency, lateral of the rim, in securing the demountable rim in place, is valuable. It eliminates the squeaking of rims and the loosening of parts that the testimony shows so frequently occurs with those types of rims that employ a wedge at the front or outer side of the rim for securing the rim to the felly.

The plaintiffs contend that, when the demountable rim is held in place by the old and well-known form of wedge keepers, such, for instance, as is shown in the French patent to Michelin of 1905, or the wedge rings, that the advantage of the resiliency is lost, and that it was an object of such wedge structures to eliminate resiliency in the assembly.

There is force in the proposition that resiliency is lost if there is a solid iron part between the direct load, or the demountable rim and the direct carrying place, or the felly, as is the case when the demountable rim is held by a wedge. The demountable rim is not held in place against the back flange by a resilient pressure acting laterally of the rim with the wedge-securing devices; nor is there a lateral follow-up action, as the plaintiffs term it, between the back flange, the demountable rim, the clamp, and the nut.

I do not find in the prior art a demountable rim structure, in which the outer side of the rim is not held by a wedge positioned in between the load and the support; in other words, a wedge positioned in between the outer edge of the felly and the demountable rim.

It does seem as if Michelin filed his application without having this resiliency in mind, for while the structures shown in his drawings have this resiliency, he did not at first claim it or describe it in his specification. While it may lessen the value attached to it, I do not see that it is a justification for holding the patent void.

I hold the Michelin patent in suit is a good and valid patent.

This brings me to the question of infringement. I am satisfied, from such study as I have been able to make of these two structures of the defendant, that the defendant reaches its present structure from looking at and studying the Michelin patent in suit; but, if defendant succeeded in getting away from the Michelin patent, that is no reason for holding defendant infringes. I cannot help but think defendant's devices grew out of the study of the Michelin patent, and the effort to avoid infringement, and that is proper if defendant succeeded in doing it. I do not consider that defendant has been successful in its effort to accomplish the result without infringement.

Whether there is a little radial pressure at the outer edge of the rim does not seem to me of great importance. I think there is some radial pressure from the outer edge in practically all of these structures, and surely there is at the inner edge of all of them; but I do not think it can be said in the Michelin structure of the patent in suit, or in the defendant's structures, there is the wedge movement, even though there is some radial pressure. There is no wedge directly over the felly at its outer edge and under the demountable rim. In the structure of the Michelin patent in suit, if there is any radial movement, it is from the upward pressure of the arm; but the outer part of the spring clamp in the Michelin Patent is a clamp proper, that acts to hold the demountable rim against the back flange on the inner side of the wheel.

The defendant has attempted to avoid infringement by making the clamp fast to the demountable rim; but I do not consider that the particular place where the clamp comes in contact with the demountable rim makes any difference. Infringement is not avoided by placing the clamp at some other place than the extreme outer edge of the demountable rim. The clamp might be arranged in some way so as to be caught in a groove or a hole, or engage some projecting part on the rim, so that it had its contact with the rim at some place other than the extreme outer edge; but it would not avoid infringement merely to change the point of contact.

According to the strict letter of the definition, defendant's structure probably is not a clamp, as it is fast to the demountable rim; but it serves the purpose of a clamp, and is equivalent to a clamp. I cannot figure out by any line of logic how defendant avoids infringement by securing its clamps to the rim.

The resiliency of the inwardly extending part of the clamp in defendant's structures is not lessened in any degree by the fact that the contact of the clamp with the rim is at a place inside of the extreme outer edge of the rim, nor by the clamp being made fast to the rim, so that it will not lose off. Defendant's structures have all the advantages of the invention of the Michelin patent in suit. I do not see any advantages in Michelin that are not carried out in defendant's structures. Defendant's structures, as I learned, are covered by a patent; but this is an improved patent. Defendant may have added something to the Michelin invention, but that does not avoid infringement.

[2] Plaintiffs claim for the Michelin patent in suit the advantage of the filing date of the Michelin French patent, No. 368,663, under the provisions of the International Convention. The French patent is recited in the oath of the application for the Michelin patent in suit as being a patent taken out by the inventor, his legal representatives or assigns, prior to the filing of the United States application. Defendant contends that the patentee of the Michelin patent in suit should have been called to testify that he was the inventor of the invention of the French patent, No. 368,663. According to the strict rules of evidence, the recitation in the oath of the United States application would probably be hearsay. On the other hand, in view of the law, I reached the conclusion and hold that the French application becomes a part of the United States application, and that the French proceed-

ings become a part of the proceedings in the United States application, so that what Michelin said under oath in the United States application about the French patent is brought into the United States application in such a way that it does not need to be re-proved by separate testimony. It would be a most unusual thing for a man filing an application to swear to that sort of a thing, and of looking so far into the future to a scheme of wrongdoing, and any other holding might cause a lot of expense and trouble; so I hold that it is not hearsay, but is a part of the United States patent proceedings, and, like everything else in connection with a United States application, it is covered by the oath and is a part of the evidence here. ·

Plaintiffs may take their decree, holding claims 1 and 2 of the Michelin patent in suit valid and infringed by the defendant's two structures relied upon in connection with the proof of infringement.